Good morning, your honors. I may please the court. I'm Eric Wolf, counsel for the recipient of the National Security Letter and Letters, and with me at counsel table is Michael Sussman, and I will aim to reserve five minutes for rebuttal. In this case, in this appeal, there is a simple but very important First Amendment principle at stake. So our client wants to speak about what the government is doing, and as reflected by the amicus briefs that the court has received, there are lots of other groups and individuals, including the press, that would like our client to be able to speak about what the government is doing. But we cannot because of the nondisclosure requirement, which is of unlimited duration. So your only complaint in this case, I take it, is that the district court didn't, in approving the extension the last time, set up a periodic schedule and review? That's right. So the principle at stake is narrow tailoring and least restrictive means. You're not making any claim, for example, that there's something special about these letters or your client that requires something more often. So my question is, why isn't that a facial challenge on the statutory scheme that we've already upheld? Well, that's a very interesting question because I've thought about this. I've worked on it hard. Yeah, no, it's good. It winds up kind of feeling that way because it has to apply every single time. And I think this court absolutely recognized that in the earlier opinion. So I read pages 11, 26, and 27 of that earlier opinion, and here's what I think you all were doing. Maybe I'm wrong, but it seems pretty clear to me. You've got this facial challenge, and the concern is, in the statute, you could have these nondisclosure requirements be unlimited. There's nothing in the statute that says they have to be limited. And there's directions to the Attorney General, but there are gaps in the Attorney General's regulations. You'll have cases that won't apply. Plus, you can't just leave it all to the executive branch. You have to have judicial review. So at page 11, 26, this court is right on point and says, this is a problem, and it's not completely covered by the Attorney General's regulations. And frankly, I think this court answered the question in this case. I really do. But then we say on 11, 27, moreover, as part of the judicial review process, the court may require the government to justify, and we point out that the receiving party may ask for it. So the question in this case seems to me, why doesn't the ability of your client at will to ask for review solve the First Amendment problem? I have several responses to that. The first is because the court's order has to satisfy narrow tailoring. So this court says... So okay, so if the court's order said, gee, I was going to set up a periodic schedule, but I've looked at the statute, and I realize that you can ask for it whenever you want. So I'm not going to set up one, which is the way I read this court's order. That's insufficient. That is insufficient. So if the court set it up every year, would that be sufficient? Yes. And let me be very clear about what we're seeking here. We are seeking vindication of the principle... I understand. I mean, you're... It can't be unlimited. I understand you're not doing this for profit, and you're great people. I mean, but I'm asking specific questions. You don't have to defend your motives. Sure. What are you seeking here? You could just finish that. That it can't be unlimited. It can't be unlimited. What do you say? It can't be unlimited? The non-disclosure requirement. It can't be unlimited. So if the court said every year, you wouldn't be here? Correct. Okay. If the court said instead, I'm going to set it up every year, but I'm going to call the parties first to make sure they want it, that would be okay? Yeah, perhaps. Here's... About every three years. Okay. So there's a big asymmetry here. You all have the sealed information. We haven't read it. And I don't know what it is. It's not relevant to our decision today. Okay. Because you're not making an as-applied challenge. You're not saying there's something about the information. Did you concede that the court was justified, at least on this record? We're not challenging... Okay. So we don't need to look at the information. Our question is, can a court rely on your ability to demand a hearing on 30 days notice at any time in saying, well, I set up a schedule. The parties will let me know when they want it reviewed. No. And here's why. For several reasons. First of all, the court's order itself has to satisfy narrow tailoring. And so unlimited duration doesn't satisfy that. But doesn't the court's order encompass the statutory scheme? That's what the judge said here. But if the statute could provide that kind of belt and suspenders, then I don't understand 1126. Because 1126, in the prior opinion, says a court's order must be within constitutional bounds. Therefore, a reviewing court would be inbound to ensure that it does not remain in place longer. So the court, not leaving it to some other party. And here's the other reason not to leave it to some other party to make sure it doesn't go on too long. So as I read this court's opinion, this is later on in the opinion, that the court was faced with this Friedman versus Maryland problem. Which is, Friedman says, it's the government's burden to go to court. And it's the government's burden throughout. And the challenger there said, you know, the government ought to have to go to court for each and every one of these national security letters. And the government's attorney, in that case, got up and was like, there are tens of thousands of these things. And I think that was a great argument, but it's not the one in front of us. Right. And so this court struck a compromise. And I think it's important to stick to that compromise. And that compromise was that we will go ahead and put the initial burden on the recipient to notify the government. And then the government will go to court. And the parties at that time were like, okay, that's going to be a fraction of the letters. And that's manageable. Now we're talking. So the initial- Here's my concern with 1126 and 1127. Luckily, we have one of the judges in the panel here. Maybe she knows what it means, but I'm not going to guess on that. It says may. It says, doesn't say must. And you're not making an argument. See, if you were making an argument saying, in our case, there's a need for periodic review because judge, look at these letters or look at us or something else. I'd understand that. But what you're saying is that the statute demands on its face that the order provide for periodic review. And I don't see that in 1126 and 1127. I see a lot of mays and can and shoulds, but I don't see a must. I mean, I don't read the may on 1127 as saying this is optional. It's not optional. I think if- Well, why wouldn't it have been must or shall? I mean, it seems like may is a different term than must or shall, isn't it? It is, but- Because I'm trying to find out what you seem to latch onto that particular language in INRI NSL in which we stated a court, because I want to make sure I understand. It says a court may require the government to justify the continued necessity of non-disclosure on a periodic, ongoing basis. But it seems to be nothing more than a recognition that the district court has the to do. So I'm having a little bit of a difficult time understanding why you think periodic review is required here and why you think that we as a appellate court have a better idea than the district court, if that's what you're arguing as well, of whether periodic review is merited under the circumstances. So if you can walk me through that argument, I think it'd be helpful. Let me, maybe let me go back to sort of the first requirement that led to these examples of narrow tailoring. The court must narrowly tailor. We can all agree on that because it's subject to strict scrutiny. It's a content regulation. There must be narrow tailoring. The First Amendment demands that. That's not a statutory thing. The First Amendment requires narrow tailoring. Narrow tailoring means least restrictive means. So if what we got is more restrictive than it needs to be, it's going to fail narrow tailoring. And there are musts. On 1126, there are musts. A court's order enforcing an administrative subpoena must be within constitutional bounds. Therefore, a reviewing court would be bound to ensure that it doesn't remain in place longer than required. Those are musts. And so that seems to me to talk to the review that the court does when it looks at these things. In other words, when it looks at it, it must be determining that the order should not remain in effect any longer than possible. The question is whether or not it must do so through scheduled periodic review or must do so when either party asks it to. So if the problem you're getting at. My problem is we really didn't decide this issue in National Security Letter. You can argue for principles in it. But I don't think you can say this was already resolved by that case. Well, I'll take that, Your Honor, because the government is arguing that you've already decided this. And I'll take that concession that it's open. And so now you have to decide this case where a court, despite this language, despite these examples of how you would do narrow tailoring, a court went out and said, nah, unlimited duration. That's fine. The court didn't say the court. This court was this district judge said, I note that you can ask for review whenever you want it. That seems to me to satisfy your concerns. But then what does the press do? I'm not worried about the press for the moment. I'm worried about this order. The judge said the party who wants to speak, not the party who wants to discover material. You're making a First Amendment claim. The party who wants to speak can ask me at any time to free it. I've already made a determination that it's necessary for purposes of national security that you not speak. If you think the circumstances have changed, or you want to come to it, you want to speak, just let me know and I'll review it again. So tell me what's constitutionally wrong with that. Once the initial determination is made. My problem with the statute, but I'm not on the panel, is I think it ought to be made at the front end when the government imposes the letter. But it was. I know for one thing, the national security letter says that's not what the First Amendment requires. So given that, and there's already a determination that there's a national security interest here, you don't contest that. And the judge says, if you think you get to a point where you want to speak about it, let me know and I'll look again and see if it's still there. What's wrong with it? There are many different things wrong with that. And I think it takes that small compromise of the earlier decision and makes it a much larger compromise of the First Amendment principles. So you are putting all vindication of the First Amendment interests, which include the interest of the press, which include the interest of concerned citizens, concern the interest of targets, like whoever the target is of these letters, those now. No, see, the problem is the target's not here. We don't know who the target is. The press is not here. You're arguing on behalf of the recipient of the letter who says, I want to speak. And the court says, I understand that. I'm concerned about your right to speak. So if you're ever, and I've now made a determination that you can't speak right now. I've looked at the material and it would, all the reasons why you can't speak, the court found. You want to speak later? Just come and see me. I'll check again and make sure everything's OK. But that really runs roughshod over the reason why we make the government go first in prior restraint cases. But the government, see, my problem here is the government did go first. The government did go first in the sense that we've said in the national security letter, once you go to court and the judge says it's OK, we don't go look backwards and worry about the time period before. To be clear, the government did not go first. OK, the government only moved because a letter was sent to the government. That's right. But don't we start with our analysis at that point? At that point, the judge looks at all this material and says, good reason to keep it secret. From that point going forward, which is what I'm focusing on, we know there's a good reason to keep it secret. He's made a determination there's national security interest at stake. Why is it such a burden on you after that to say, judge, we'll come back to check when we want to speak again? So just to be clear, what you're hypothesizing, and you're treating this as sort of all cases, is you're thinking that, well, you know, all recipients are the same. No, I'm treating it as this case. You're not here in a class action or behalf of other people. You're here on behalf of this recipient in this case. So tell me why in this case that's not an appropriate stand for the judge to take. If you're going to lay down that rule, it's going to apply to all recipients. It may not, see, because you're not making an as-applied challenge. If you were here saying, I'm a recipient who has 45,000 non-disclosure letters, and it would place an enormous burden on me, court, to have to make these requests when I want to speak, we would then have an as-applied challenge to the statute, and I could determine whether the district judge in weighing those things abused his discretion. But your contention is that in every case, periodic review must be ordered, whether the person is a recipient of one national security letter or 11,000 of them. So you're the one who's making the pure legal argument. So my question is, what's wrong with it in your circumstance? It's not the least restrictive means. Periodic review or limited duration is a lesser restrictive means. And what would that be? I'm sorry. What would that mean? What would you argue for? Any limitation is less restrictive. But you mean like a yearly periodic review? Yes. Any limitation is less restrictive. But isn't the wording here that every three years, basically, the agency has to do? OK. So that's the Attorney General's review, and that's just on the third anniversary at the beginning. It's not every three years. It's just on that first third year anniversary. And that's not court review. We're correct, and we're outside that. And why isn't that sufficient? Because we're outside that. Because this all started in 2011. And so the three years are gone. The nondisclosure is still in place. And so there's no further review. Your issue is the burden of having to just make the request. Yes, but our issue is- Because in NSL, it said that was de minimis in light of all of the interests. The initial burden. That's right on that page of NSL. It refers to the initial burden. That's the first letter that gets sent from the recipient. But then after that, so that's the compromise. Like, if we were going to be First Amendment purists, if we were going to turn square corners on First Amendment doctrine- NSL would have come out differently. Correct. And you would have made the government go to court on every single one of the letters. Right, and we should have, maybe, but we didn't. So you struck this initial compromise and said, for the initial one, we think it's de minimis to have the recipient do it. But I think sort of projecting that out, that is the wrong First Amendment balance. I don't think that is consistent with the kinds of interests at stake here. This is about someone talking about what the government is doing. But now you're attacking the premise of NSL, which is a fair argument, but this panel can't undo it. With all due respect, I think you're overreading it. Because you yourself said on 11-27, I don't think we decided this issue. But now you're treating the decision as if you did. I'm sure we didn't say there must be periodic review or the order is unconstitutional. Because we didn't say that. You said it must be narrowly tailored. We must be narrowly tailored. And the question is whether or not, with the statutory scheme behind it, it's- and you're taking- I appreciate your position. Your position is absolutist, which is that if I have to ask, then it's not the least restrictive means. If the court demands that the government do it without me asking, it would be the least restrictive means. Is that a fair summary? I think so, yes. Okay. You've asked me a lot of really good questions. My mind's kind of spinning a little bit. Well, you're a really good lawyer. That's why I'm asking you really good questions. I think you're doubling down on the initial compromise that was struck in NSL. And I really don't think you should, because of all the First Amendment interests at stake. And what we're asking for is hardly unreasonable. See, my difficulty, and I want to be honest about it, is I'm not sure. I wasn't on the panel. If I were on NSL, I would have arrived at this result. But luckily, I wasn't. And now I'm bound by NSL. So I'm trying to figure out if what you're asking me today is really an attack on the premise of NSL- Not. Or is permitted by NSL. It is absolutely permitted. I say this. I know I was a former prosecutor. You're not supposed to vouch. But I can tell you, my reading of 1126 and 27, you absolutely have this window. It must be narrowly tailored. There are examples given of what narrow tailoring must be. But if that order is not narrowly tailored, if it's unlimited, then it falls under NSL. I don't need anything other than this court's opinion to reach that conclusion. I think that's the right answer. That protects the interests. And that is not an unreasonable practical solution. And I know you both sides have access to cases all around the country that may or may not have gotten into reported decisions. Is there any reported decision since NSL that says an order must have periodic review? Yes. You have some of them in the excerpts of record that were otherwise sealed. Well, we have some in which periodic review was ordered. My question is, do we have some- That say NSL required it. That NSL requires it. I don't know. I'm going to ask Mr. Sussman when I sit down, and I'll get back up and talk with you about it. Or the Second Circuit case. Yeah, the Second Circuit case is very favorable for us on this. Like the Second-  I think that's probably a fair statement. That's my problem with the Second Circuit case. Yeah, but the Second Circuit recognized that you don't leave it to the government, and that it was very important that the government move first. And I'm not saying that the initial compromise this court struck about having the recipient go to the government first. I'm not saying that's unreasonable. But as far as the eye can see, saying that a recipient has to then keep checking in, it's this do-it-yourself narrow tailoring. That's what we said in the brief. That is wrong. That's not how this should play out, and you have room to do otherwise on that, and I really think you should. Thank you. May it please the Court. Joshua Revesz for the United States. The nondisclosure requirements challenged here do not violate the First Amendment because the FBI demonstrated with specific facts that the need for secrecy exists not just now, but indefinitely into the future. And it's this court's framework in the NSL case, in combination with those facts, that in our view resolves the appeal. How is the district court order narrowly tailored? The district court's order is narrowly tailored because after examining the classified evidence, the district court decided that showing in that evidence that the need was indefinite, plus the termination procedures, plus the availability for judicial review whenever appellant wants it. So in your view, in the absence of the termination procedures and the ability for judicial review, would the district court's determination of an indefinite duration violate the First Amendment? I'm not sure about that. This court in the NSL case said the termination procedures matter and the availability for judicial review matters, and the district court took that as a given, and so do we. What I think is correct is that the FBI demonstrated here, and you all can review these facts in an as-applied challenge, that there's an indefinite need for nondisclosure of these three letters. I think that's correct. They don't challenge that. I mean, they don't challenge the judge's finding. They challenge whether or not he can impose an indefinite duration in the absence of some periodic review. So they have an as-applied challenge, and they have a categorical argument as part of their as-applied challenge, but that's partly because they can't review the underlying classified material, and they want to be fair about that. Yeah, so they can't come in and say, gee, there's something about the material in this case that makes me want to speak much more than the material in another case. So what they want to do is ensure, because they can't look at the material, that a district judge periodically looks at it and makes sure that his original determination that an indefinite restriction was necessary remains the case. And to make their argument even refined even more, what they're saying is the order's not narrowly tailored unless the judge on his own sets up a schedule to do that. He can't require us to come and see it. Tell me why that's wrong. Because for something to be more narrowly tailored, it has to permit more speech or it has to permit speech sooner. There has to be more speech that will come about as a result of the narrow tailoring. Here, because the need is indefinite, as the district court reviewing the evidence agreed, the same speech will happen after three years, whether there's periodic review or not. No, it won't. All that will happen after three years is the FBI will look at it. I'm trying to figure out how often a court gets to look at it. Right, so I want to bracket the question of whether periodic review would involve court. By the district court. Right, would involve periodic review. But the need for nondisclosure is not going to end after three years here. How do we know? Because of the classified declarations, which are due deference. You know, the executive's factual determinations are due deference under humanitarian law. They surely have the right, you agree, under the statute to go back to the district court tomorrow and say, check again. They absolutely have that statutory right. So what's wrong with the judge instead saying, rather than putting the burden on you to keep asking me to check, I'm going to set up a schedule. Once a year, I'll review if you want me to. I won't review if you don't want me to. Well, I think what would be wrong with that is the First Amendment doesn't require it. And it doesn't require it for at least two reasons. One reason is that the First Amendment doesn't protect people who don't want to speak being able to speak. So there's some reason, you know, there's some First Amendment value in making sure that people tell the government, I would like to speak about this. Let me do it or not. The second reason is that periodic review is not more narrowly tailored. Where the result of that periodic review will be, the need for secrecy will persist indefinitely. But we see that's what the problem is. We don't know that because events will change over the course of a year or two years or three years. Well, events might change. You concede that a judge might look at this in six months and say, all the reasons for keeping this secret have now gone away in light of subsequent events. Or the government concedes that there's no reason anymore to keep it secret. So there's a legal question here and a factual question here. And I want to try to say something with the legal question assuming a set of facts. Right, because they're sort of precluded. One reason I didn't look at this stuff is they're sort of precluded for making the factual question. And so I don't want to have it in my mind either. Right, that makes sense to me. Although I think that, you know, if you were going to rule against us, you would want to certainly read the classified information first because this is an as-applied challenge. So assuming that the facts were such that, you know, a district judge reading the classified record would think, none of this information is going to come out, none of it is going to be able to come out next year, none of it is going to be able to come out in 10 years, none of it is going to be able to come out in 50 or 100 years. I'm not saying whether that is this case. Then periodic review would not be more narrowly tailored because it would result in the same amount of speech being possible now in three years, in 10 years, in 50 years, in 100 years. So that's our legal contention, that where the need for nondisclosure is going to be indefinite, that no periodic review is required because the indefinite need plus the termination procedures, plus judicial review whenever they want it, satisfy the First Amendment. Now then there's the factual question. Is the need for nondisclosure indefinite of that type? And that's what the classified declarations speak to, that's what the district court examined, the district court obviously agreed, and we think that that's correct. But we don't have a categorical position here. You know, we acknowledge that under this court's opinion, the district courts have the authority to impose periodic review where they think that doing so is appropriate. And we're even prepared to acknowledge that under some set of facts, periodic review might be required by the First Amendment. And the district court would be able to set that, if that's the case? If that's the case, the district court would be able to set that. We would be able to appeal if we thought that that was wrong, or if it were underly burdensome. The district court absolutely would have that authority. The only party under your view that would not be in a position to make that argument is the recipient of the letter. Right, so Congress... You would argue based on the facts. You'd say, no, judge, periodic review isn't a good idea here because of X, Y, or Z. But they can't argue on the facts. So Congress decided that the facts here would be made available on an ex parte, in-camera basis to the courts. And concomitantly, it put the burden on the court to make sure that these factors were met, that non-disclosure would... Excuse me, that disclosure would harm the national security, would interfere with an investigation, would interfere with diplomatic relations, would result in the harm to a person. So the district court bears a burden here. And the district court found that the government satisfied that burden, not just now, which Appellant doesn't contest, but also into the future. But the other side here is arguing that the burden's really on them because they have to come forward. In this case, I guess there's three letters, but there could be other cases. And I know this isn't the case, but I'll just go ahead and ask you so you can answer both. Why isn't it a burden to them to come to issue the letter to the DOJ or to the court directly? And especially if it were many more letters here. So I think that burden argument is something that is foreclosed by NSL, which describes the burden as de minimis, which talks about the availability to seek judicial review when it goes through this indefinite duration argument, which has this footnote... Let me see if I can find it. Footnote 18 that says, the recipients also argue that the judicial review provisions are insufficient because they are triggered only if a recipient challenges a non-disclosure order. We reject this argument because judicial review is available to every recipient and dot, dot, dot, the burden of obtaining judicial review is de minimis. And I think that... Tell me what we do in a case where they say... One thing we did say was that the court should do it as appropriate. Definitely. We didn't use may. How do we tell whether it's... How can the recipient ever know whether to challenge its appropriateness? Well, the recipient can challenge it whenever the recipient thinks best. I'm at the absence of periodic review. I mean, the recipient can craft its own periodic review schedule as it desires. That's something the statute allows it. In that respect, the statute might go further than the First Amendment in at least some cases. But it is true that the recipients under this statutory scheme don't play a role in determining, in the application of the law to the fact that the government submits the facts and the district court, you know, on a next party basis, decides whether given those facts, the government has met its burden. If I were to break your argument down to its essence, it would be that their ability to get review whenever they want is a sufficient First Amendment protection. At least here, where the FBI has demonstrated with specific facts. Yeah, and see, that's why I went... I took that point going forward. One of my problems with NSL is, and maybe it's correctly decided, there's no review at the front end. Here, we actually have a review that's occurred. And I just want to be clear, there is some review at the front end. Not by a court. By a court when they want review by a court. And every time they send a letter, they not only get judicial review eventually, but they... You don't have to go to a court before you send a non-disclosure letter, correct? We don't have to go to a court before we send a non-disclosure letter. That's correct. So there's no previous review of a court of the ban on these people engaging in speech? Not unless they want it. And if they want it, they get it. This is a case in which there has been a review because somebody eventually asked for it. Right. And not only is there a judicial review, but there's also been an administrative review. And the FBI has to meet the burden, the same burden that the courts have to meet. The FBI can't continue the non-disclosure unless it believes the disclosure of the information will cause one of the four enumerated statutory harms. And if they don't think so, then they will release the non-disclosure obligation, as happened in the NSL case for some of the NSLs. You know, some of those... Would the statute be unconstitutional if there were no judicial review? You know, I can't take a position on that on behalf of the United States. I mean, certainly the fact that there is judicial review. Isn't judicial review an essential component of making the statute constitutional? Otherwise, the FBI gets to say on its own to people, don't speak, trust us, we've made the decision. I actually think the judicial review is a critical part of the statutory scheme, and that's part of why I think this court's case came out differently than the Second Circuit's case examining the previous regime. Why do you think it came out differently? Because narrow tailoring permits the government to forbid speech when that speech is not going to come out because there's an indefinite need, as in this case, and I assume in many other cases, given these safeguards, given the termination procedures, which are required by statute, and given the availability of judicial review, not just initially, but at any point. I think all of that together satisfies strict scrutiny. So let me ask you a question. I asked your friend, what's the case law around the country on this? We know the Second Circuit has a somewhat different approach than we did. Is there any other case law? Because so many of these are under seal. That's not identified in the briefing? And if so, what is it? No, I don't think there's any case law that's not identified in the briefing and in the excerpts of records. And is it fair to say that the ones in the briefing, there may be periodic review orders in those cases, but nobody has confronted whether or not they are required constitutionally. The judge found them appropriate. Certainly no court has ever said as a categorical matter, periodic review is always required. There have been some courts looking at some classified information that have looked at the information, and I haven't read that information in those other cases, and have said periodic review in this case is appropriate under the circumstances, or perhaps even required by the First Amendment as applied. But that's a fact-specific inquiry. That's what's going on in the DDC case that the NSL court cites. The District of Maryland case is a little bit different because it's before the termination procedures. There's also a Western District of Texas case that's in the ER that imposes periodic review, kind of similar to what the DDC court did. And all of that is a fact-specific inquiry. And I think that just underscores that there's no categorical answer to this question of periodic review. Let me change the facts again. Let's assume that the recipient has 10,000 non-disclosure letters. Could the recipient say, without regard to the facts of my particular case in front of you, Judge, you need to set up a periodic schedule because otherwise it puts a tremendous burden on me to make 10,000 requests? You know, I don't think it... I think that would fail on the merits because I don't think it imposes that much more of a burden to send a letter saying, please review these 10,000 letters. And to send a letter... I mean, no one is getting 10,000 letters. I just want to be clear on that. Then to send a letter saying, review these three. It would put much more burden on the government. I mean, the government would then have to review 10,000 letters and would have to file a petition about those 10,000 letters in the district court. But I don't think that the burden on the recipient would be that much greater even if you need more lines kind of in the letter itself. And under the statute, there's no requirement of a showing for the recipient of the letter to make the government petition for review. That's correct. They don't have to show change circumstances or anything else. That's correct. Even at will. That's correct. But the district court does have the authority and the discretion to order periodic review. And we're not contesting that. Right. I know. In your last example, I guess you would have contested that if the district judge had just said, yes, because of the sheer number, we're going to require periodic review. I mean, it seems like it would be in combination with what the actual subject matter is or the merits. But I guess you're saying you would then appeal that if it was just the sheer number. So I think the subject matter would be much more important than the number in such a situation because where the government's need for nondisclosure is indefinite. So just imagine it. And this isn't this case. You know, just imagine you had some declaration saying, if this will come out, there'll be enormous harm, whether it's now or, you know, as long as kind of the world exists the way it is. Then periodic review would not be required by the First Amendment because it would result in no more speech and thus would not be more narrowly tailored. And so if you had that kind of circumstance, then I think a district court would be acting inappropriately in requiring periodic review. How would, BJ, I'm now curious, how would the appeal proceed? You would attack the district court's order in the Court of Appeals. Who would defend it? Well, I assume the recipient would defend it. I mean, these are adversaries. He can't defend it because you're making a fact-based argument and he's not entitled to see the facts. Right, but the court could, I mean, this court could see the facts. This court would review that de novo. And we've lodged the classified material with this court if this court thinks that it's important to review it. And we're not arguing for any deference to the district court's kind of application of First Amendment law to these facts. We think that the FBI met its burden here, very clearly met its burden here. The district court agreed. We think that's- Well, they're not contesting that. So that's why that's, they're not contesting that the district court's decision when made was correct. What they're saying is that it's unconstitutional because there's, the district court also didn't provide for it on its own to periodically review that decision. Well, so what we're thinking about is the district court made two findings. The first finding is right now, the criteria are met and they're not contesting that. And that's correct. Right now, what's the first finding? The statutory criteria for non-disclosure are met. It will either, you know, create a danger to diplomatic, you know, diplomatic relations or any of the other three. Then there's the next finding, which is given what's in these declarations, it would not be productive to have periodic review because the FBI's need for non-disclosure here is going to last into the foreseeable future and indefinitely. And that's what I take it they're challenging as applied to this case. They're not getting into the facts because the facts are made available only on an ex parte and camera basis. But this court can review those facts and this court can decide whether the FBI's prediction, which again is entitled- Making another facial challenge to the statute. Well, they say they're making an as applied challenge. But however we characterize it, they're challenging the statutory scheme to the extent that we don't read it as requiring periodic review. And to the extent that they're saying the periodic review is always required, we think that's clearly wrong. We don't think it's compelled by the NSL case, you know, which uses May, as the court pointed out, and which discusses this only after it discusses the termination procedures. And then in the next paragraph, only after it discusses judicial review other than periodic review. You know, which judicial review always has to satisfy itself whenever it happens, that the four criteria are met. And again, in some set of facts, it's very clear that the FBI need for non-disclosure is indefinite. Therefore, that the same result will obtain whether you have periodic review or not. And therefore, the periodic review is no more narrowly tailored. And that, I think, responds to the categorical position. Then you get into the fact specific position. And as to that, all I can say is that the court should look at the classified documents if it thinks that's appropriate. And if there are no further questions. No, thank you. We'll ask that this report be affirmed. Thank you. Oh, I'll give you a minute. Okay, I'll answer the question about, I gotta ask Mr. Sussman, do we have any district courts who are citing the NRA NSL and say, I have to put in periodic review? He's not aware of any decisions. I wasn't either. I always think the lawyers probably know more than we do. Every now and then, that's true. On the periodic review and narrow tailoring and perfect tailoring, if we could do perfect tailoring, the restriction would end as like the moment the statutory criteria were gone, right? But it's very difficult to know that if it's diplomatic relations or something like that. So they hammer periodic review and say, well, you'll keep having periodic review, but the criteria will still be met. You're not restricting any more speech than necessary. But the point of narrow tailoring is to try to get as close as you can to lifting that gag when it should be lifted. And that is a very important principle. And so whatever limit can be put on, as a matter of First Amendment principle, it's important to have that limit. And maybe appropriate orders in the statutory language is a way to get at that, that nearly every time it's appropriate. But that is a very important principle. Thank you very much. Thank you both for your helpful arguments here today. The case of William P. Barr versus Under Seal is submitted. And that concludes our docket for this morning. And we'll be in recess. Thank you very much.
judges: Murguia, Hurwitz, Guirola